IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER (614) 615-3696 by T-Mobile | Case No. 2:23-mj-631<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, John Butterworth, being first duly sworn, hereby depose and state as follows:

**I.     INTRODUCTION AND BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(614) 615-3696, utilized by Kensel MORGAN,** referred to in this affidavit as the "Target Cellular Device." The service provider for the target cellular device is T-Mobile, a wireless telephone service provider headquartered at 12920 Se 38th St., Bellevue, WA 98006. The Target Cellular Device is described herein and in Attachment A and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site information, that may fall within the statutory definitions of information collected by a "Pen Register" and/or "Trap and Trace device", *See* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer, with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have experience in the investigation, apprehension and prosecution of individuals

involved in federal and state criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4. During my assignment with ATF and employment as a law enforcement officer, I have assisted with investigating criminal violations relating to firearms, violent crime, and narcotics trafficking. I have participated in various aspects of criminal investigations, including interviews, physical surveillance, and the execution of search warrants. I am familiar with and have participated in investigative methods, including electronic surveillance, search warrants, and the utilization of confidential informants.

5. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that **MORGAN**, a convicted felon, did knowingly and intentionally possess a firearm in violation 18 U.S.C. § 922(g)(1). As a result, your affiant is requesting a search warrant to locate **MORGAN** and the Target Cellular Device.

7. There is reason to believe the Target Cellular Device is currently located in the Southern District of Ohio because **KENSEL MORGAN** —the user of the Target Cellular Device—is known to spend most of his time in this district, primarily Columbus, Ohio. Additionally, the Target Cellular Device has an area code local to Columbus, Ohio and, as further described in the paragraphs below, Columbus Police Officers viewed text message conversations in which **MORGAN** appears to be utilizing the Target Cellular Device while communicating with a victim of a reported incident.

8. I believe that locating the Target Cellular Device will constitute and lead to evidence of federal offenses, namely 18 U.S.C. § 922(g)(1) Possession of a firearm by a person who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## II. PROBABLE CAUSE

10. On October 24, 2023, Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF) Crime Gun Intelligence Center (CGIC) Ohio Bureau of Criminal Investigation (BCI) Task Force Officer (TFO) John Butterworth received and reviewed information from the National Integrated Ballistics Information Network (NIBIN) Enforcement Support System (NESS) regarding NIBIN lead number 773-23-004914, and identified Kensel **MORGAN**, a multi-convicted felon, as potentially in possession of firearm(s) in Franklin County, City of Columbus, Ohio, located within the Southern Judicial District of Ohio.

11. NIBIN is the United States' national automated network that searches for previously unknown links between events involving the same firearm(s). NIBIN relies on advanced technology called IBIS (Integrated Ballistic Identification System) which uses specialized 3D microscopy to capture the marks left by firearms on fired bullets and fired cartridge cases (cartridge casings) and then uses algorithms to find similarly marked bullets or cartridge casings within the NIBIN database of captured images.

12. IBIS technology is based on the principles of firearm identification. The firearm identification discipline is based on the fact that the surfaces of each fabricated item of the firearm (such as the firing pin, barrel, ejector, and breech block) have random tool marks from the

-3-

manufacturing process that leave marks on components of the fired ammunition. Thus, these components bear the firearm's "mechanical fingerprint" once fired.

13. NIBIN lead 773-23-004914 indicated .45 caliber cartridge casings fired from the same crime gun were recovered at the scenes of the following incidents:

14. Incident 1 – On March 11, 2023, crime gun 773-23-004914 was believed to be responsible for a shooting event that was reported by a ShotSpotter event in the area of 470 Whitethorne Avenue, Columbus, Ohio where Kensel **MORGAN** is listed within a Columbus Police Department incident report as a person of interest. **MORGAN** was implicated by a witness as banging on a door to the residence and then driving away. Shortly after banging on the door, gun shots were heard, and **MORGAN** drove away according to the witness. The witness did not observe **MORGAN** fire the shots, however, the witness believed it was **MORGAN** that did so.

15. Incident 2 – On October 17, 2023, crime gun 773-23-004914 was believed to be responsible for a shooting event that was reported by a victim of criminal damaging. The victim reported a vehicle struck by bullets while parked at 766 E. Tulane Road, Columbus, Ohio. After searching the area, officers from the Columbus Police Department observed the damaged vehicle and located fired cartridge casings across the street from the victim's address. Kensel **MORGAN** was listed in the incident report as a person of interest as the victim stated **MORGAN** has been making threats via text message due to the victim not allowing **MORGAN** to communicate with another associated person. At that time, the cellular phone number of (614) 615-3696 was provided by the victim to law enforcement.

16. On November 6, 2023, a follow up interview was conducted with the victim in the October 17, 2023, shooting event by ATF TFO Butterworth and ATF TFO Amanda Hill. The victim described having known **MORGAN** for approximately the past two years. During that time the victim

-4-

has, on different occasions, observed **MORGAN** with a firearm either on his person, or within the vehicle he is driving. The victim also showed text messages on his/her cellular phone from the target cellular device phone number of (614) 615-3696 to ATF TFO Butterworth, that included a message from the victim to **MORGAN** where he/she used the name "Eugene" in the body of a message to the target telephone number. The victim and their spouse said **MORGAN** goes by the name "Eugene" or "Cuzo" instead of his legal first name of Kensel. In several text messages from the target cellular device phone number, there were messages from the phone number to the victim threatening to cause physical injury to the victim and/or their spouse.

## KENSEL MORGAN CRIMINAL HISTORY

17. A query of the Ohio Law Enforcement Gateway (OHLEG) system, the National Crime Information Center (NCIC) and online public records searches revealed **MORGAN** had at least the following convictions that prohibit him from possessing firearms pursuant to Title 18 U.S.C. 922(g)(1). On or about July 29, 1999, in the Delaware County Court of Common Pleas, Ohio, **MORGAN** was found guilty of Robbery; a felony of the 3rd degree, and Kidnapping; a felony of the 2nd degree in case number 98:CR:12-0410. On or about December 9, 1999, in the Franklin County Court of Common Please, Ohio, **MORGAN** was found guilty of Involuntary Manslaughter, a felony of the 3rd degree in case number 99CR052534. **MORGAN** also has a conviction for a violation of Title 18 U.S. C. 922 (g)(1); a felon in possession of a firearm in United States District Court, Southern District of Ohio in 2019 in case number 2:19-cr-04.

18. Kensel **MORGAN** is further identified as follows:

Kensel Ugene **MORGAN**

Black / Male, 6'2" / 240 lbs.

FBI# 116488CB5



(OHLEG BMV Photograph)

### **RECORDS REVIEW- Columbus Police Department:**

19. On October 25, 2023, ATF TFO John Butterworth, requested and received Columbus Police Department incident reports and then after receiving those reports, conducted a review of them. TFO Butterworth found the following information:

20. On March 11, 2023, Columbus Police Officers responded to a report of a Shot Spotter activation in the area of 470 Whitethorne Ave., Columbus, OH, 43223. The report number, 230176335-001 indicates that officers responded to the scene and met with a victim/witness who provided information about the incident. The witness, Monica Wade, reported Kensel **MORGAN** was at the residence and banging on the door. Shortly after the banging on the door, Wade reported hearing gunfire outside her home. Wade stated **MORGAN** drove away from the scene just after the gun fire. Wade did not observe **MORGAN** discharge a firearm; however, she believed **MORGAN** to

-6-

be involved. and Columbus Police Officers were able to locate six (6) .45 caliber cartridge casings. The casings were collected and secured as evidence. Officers submitted the casings to the Columbus Police Department property room where they were later submitted to the Columbus Police Department crime lab for testing and NIBIN entry.

21. On June 4, 2023, Columbus Police Officers responded to a report of an assault/aggravated menacing that occurred at 635 E. Weber Road, Columbus, OH, 43211. Columbus Police Department report number 230420546-002. The incident was reported by Barlin Revels, who is currently married to Kensel **MORGAN**'s ex and reportedly has been having issues with. Revels stated to officers the two were at the Speedway gas station on E. Weber Road by coincidence when MORGAN approached Revels and was upset over his son calling Revels "dad." **MORGAN** produced a firearm and pointed it Revels and said "I should smoke you" but put the firearm away when the assault happened. Revels did not call police until after the incident after his wife felt the incident should be reported. Revels wasn't sure if he wanted to pursue criminal charges against **MORGAN** at the time. Revels did have visible injuries to the left side of his face, and had a tooth knocked out.

22. On October 17, 2023, Columbus Police Officers responded to a report of shots fired at 766 E. Tulane Road, Columbus, OH, 43211. The victim of the report told officers her vehicle had been shot and damaged. Officers searched the area and located cartridge casings across the street from the reported address. Officers spoke with the victim, Danielle Porter, who allowed officers to view text messages between she and the suspect of the incident, Kensel **MORGAN**. In the text messages, officers viewed a message from MORGAN that stated the victim could not afford a shootout with him. Porter reported MORGAN to have been making threats because she is restricting communication with another woman, Brittany Woodfork. This incident is contained within Columbus Police Department report

number 230808294-001. The collected cartridge casings were submitted as evidence as secured. The Columbus Police Department incident report notes **MORGAN's** phone number as (614) 615-3696.

## ATTEMPTS AT LOCATING MORGAN:

23. On October 26, 2023, ATF TFO John Butterworth, and ATF TFO Josh Wright, attempted to locate **MORGAN** and/or the vehicle that **MORGAN** has been reported to have been operating. The vehicle, a maroon in color 2015 Chevrolet Malibu, has been reported as **MORGAN**'s vehicle, but is registered to Sabrina Harrell. It is unknown at this time the relationship between **MORGAN** and Harrell.

24. TFO Butterworth travelled to the address of 499 Heather Hill Road to attempt to locate the vehicle or **MORGAN**. At approximately 1715 hours, TFO Butterworth was driving southbound on Heather Hill Road from Fairway Oaks Drive and passed a maroon Chevrolet Malibu that appeared to be operated by a Black male. TFO Butterworth radioed TFO Wright the information and continued southbound on Heather Hill Road to check the residence of 499. TFO Butterworth did not observe any other vehicle at 499 Heather Hill Road and continued around the area to attempt to locate the maroon Chevrolet Malibu.

25. TFO Butterworth located the maroon Chevrolet Malibu and was able to confirm the registration on the rear of the vehicle as Ohio registration JZU8832. TFO Butterworth radioed TFO Wright that the vehicle registration was confirmed as the car **MORGAN** was suspected of operating. Rolling surveillance was conducted in an attempt to identify the driver if the vehicle was going to stop at an unknown location.

26. TFO Butterworth lost sight of the vehicle in the area of 5th Avenue and I-670. TFO Butterworth and TFO Wright then drove to the area of 2483 Brocton Court, Columbus, Ohio in an attempt to locate the vehicle at a known residence where **MORGAN** may be located.

27. TFO Butterworth was driving southbound on Brocton Road and continued south passing Brocton Court when the maroon Chevrolet Malibu was observed driving eastbound toward Brocton Road. TFO Butterworth continued southbound on Brocton Road and the Malibu pulled off of Brocton Court and went southbound behind TFO Butterworth. TFO Wright radioed that he was close to the area and TFO Butterworth drove north toward Mock Road. TFO Butterworth drove eastbound on Mock Road and the Malibu drove westbound on Mock Road. TFO Wright was able to locate and follow the Malibu westbound on Mock Road.

28. TFO Wright followed the Malibu to the area of 2333 Century Drive, Columbus, Ohio. TFO Wright observed the Black male who was operating the vehicle, exit and walk up the driveway to the residence. TFO Wright was able to photograph the driver of the Malibu and confirm that the driver was Kensel **MORGAN**. TFO Wright and TFO Butterworth then left the area and discontinued surveillance on this date.

### FRANKLIN COUNTY RESIDENTIAL CHECKS:

29. Investigators checked law enforcement data bases and found multiple addresses associated with **MORGAN**. Investigators went to the following addresses in an attempt to locate **MORGAN** on October 27, 2023, and have not observed **MORGAN** or the 2015 Chevrolet Malibu bearing Ohio registration JZU8832:

    a. 499 Heather Hill Road, Whitehall, Ohio

    b. 2483 Brocton Court, Columbus, Ohio

    c. 2333 Century Drive, Columbus, Ohio

  d. 2359 Century Drive, Columbus, Ohio

  e. 1746 Kenmore Road, Columbus, Ohio

  f. 746 E. Tulane Road, Columbus, Ohio

  g. 470 Whitethorne Avenue, Columbus, Ohio

### III. Training and Experience

30. Based on my own training and experience, and my consultation with others at ATF with experience in conducting these investigations, I know that people who possess weapons will maintain these weapons in their homes or in structures (such as garages and sheds) and vehicles at their residences. People who possess firearms often have other items commonly used or associated with the possession of firearms. Some of these items include, but are not limited to: other firearms, ammunition, firearm magazines, holsters, gun cases, gun accessories, and purchase information. These items are commonly stored in their residences so that they have ready access to them. Furthermore, based on my training and experience and also numerous court decisions, I know firearms are not readily disposed of, are held in possession for long periods of time, and are commonly stored and maintained in the places described above.

31. I believe utilizing information obtained through this search warrant will assist in locating **MORGAN**'s place of residence and frequented places. Combining my knowledge of the location where firearms are commonly stored, and my knowledge of the length of time individuals possess firearms, I believe the Target Cellular Device location would assist investigators in determining locations where **MORGAN** is storing these firearms and aid in uncovering where **MORGAN** obtains the firearms he is illegally possessing.

32. Information obtained from this search warrant will be used to attempt to locate **MORGAN** over the next 30 days.

33. In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and it provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

34. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

35. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1)

-11-

the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

IV. **AUTHORIZATION REQUEST & MANNER OF EXECUTION**

36. Based on the foregoing, I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

37. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

38. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may

also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

39. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

40. I further request the following information from the service provider: all precision real-time location information, including E-911 Phase II data, GPS data, and latitude-longitude data, and real time cell site information; call detail records, including cell site location information for the past 90 days; subscriber information and extended subscriber information; handset information; and per call measurement data, timing advanced/true call, RTT, NELOS for the past 30 days.

41. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

42. I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

43. A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

## V. CONCLUSION

44. Based on the facts set forth in this affidavit, there is probable cause to believe that **MORGAN**, a previously convicted felon, did knowingly and intentionally possess a firearm, in violation of 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm.

45. There is also probable cause to believe that the location information associated with the Target Cellular Device will assist in identifying previous locations corresponding to dates and times that **MORGAN** possessed the aforementioned firearms, to aid in establishing venue. Furthermore, the current location of the Target Cellular Device will assist in locating MORGAN in an effort to obtain evidence of the subject offenses, to include the subject firearm and Target Cellular Device, among other items. GPS/E-911 data will assist agents in determining MORGAN's general location.

Respectfully submitted,

*John Butterworth*

John Butterworth, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.



Elizabeth A. Preston Deavers
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(614) 615-3696**, with listed subscriber(s) unknown (the "Target Cell Phone"), whose wireless service provider is T-Mobile, a company headquartered at 12920 Se 38th St., Bellevue, WA 98006

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

### Particular Things to Be Seized
### from Cell Phone Service Provider

1. Information about the target cell phone and its location, later referred to collectively as "location information," to include all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data (PCMD, RTT, True Call, NELOS, or equivalent), and real time cell site information for 30 days, beginning from the date the warrant was issued. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the service provider and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2. To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government.

3. All subscriber, extended subscriber, handset information, and WI-FI MAC address, as well as all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible. This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other

reference points as may be reasonably available and at such intervals and times directed by the government.

4. Call detail records, SMS/Text, and data including cell site location information, for the past three months (90) days. Per Call Measurement Data, Timing Advanced/True Call, RTT, NELOS and real time cell site information for the past 30 days through the expiration of this warrant. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant or investigation unless disclosure is to their attorneys for purposes of seeking legal advice or disclosure is explicitly allowed / ordered by the Court.

5. Service provider is required to disclose all business records and subscriber information, in any form kept, pertaining to the individual accounts, including subscribers' full names, address, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, driver's license, telephone numbers, and other identifiers associated with the account. All payment information, including source of payments (including any credit or bank account number). Any and all special features, for any numbers dialed or pulsed from and to the target telephone for the past sixty (60) days.

6. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government

control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this warrant.

7. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).